UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
JODE ALEXANDRE,

                Petitioner,

    -v.-

THOMAS DECKER, in his official capacity as:
New York Field Office Director for U.S.:
Immigration and Customs Enforcement; Diane:
MCCONNELL, in her official capacity as Assistant:
Field Office Director of U.S. Immigration and:
Customs Enforcement; John KELLY, in his official:
capacity as Secretary of the U.S. Department of:
Homeland Security; Jeff SESSIONS in his official:
capacity as Attorney General of the United States, :

                Respondents.
------------------------------------- X

MEMORANDUM DECISION
AND ORDER

17 Civ. 5706 (GBD) (KHP)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 28 2019

GEORGE B. DANIELS, United States District Judge:

    Petitioner Jode Alexandre, by and through counsel, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241; 28 U.S.C. § 1651, the All Writs Act; and Article I, Section 9 of the Constitution of the United States challenging his continued detention without a bond hearing on statutory and constitutional grounds. (*See* Petition for Writ of Habeas Corpus ("Pet."), ECF No. 1.) Petitioner is a citizen of Haiti who presented himself at a United States port of entry on November 7, 2016 seeking asylum. (*Id* at 1–2.) United States Immigration and Customs Enforcement ("ICE") took Petitioner into custody and, following an interview on or about February 15, 2017 with an asylum officer, he was found to have a credible fear of persecution. (*Id*. at 10.) As his asylum claim was being considered, Alexandre submitted a parole application to ICE on June 12, 2017. (*See* Report and Recommendation ("Report"), ECF No. 24, at 4.)

1

However, ICE denied the application pending the submission of additional information. (*See* Petitioner's Supplemental Brief ("Pet'r's Supp. Brief"), ECF No. 11, Ex. 3.)

On February 22, 2018, an immigration judge denied Petitioner's asylum application, which he timely appealed to the Board of Immigration Appeals ("BIA") on March 20, 2018. (*See* Respondent's Supplemental Memorandum ("Resp.'s Supp. Mem."), ECF No. 12, at 3.) On August 15, 2018, the BIA denied Petitioner's appeal. (*See* Petitioner's Objection to the Report and Recommendation ("Pet'r's. Obj."), ECF. No. 25, at 5.) Petitioner then submitted a petition for review to the United States Court of Appeals for the Second Circuit and a motion to stay his removal from the United States pending the adjudication of the appeal. (*Id.* at 5–6.) Pursuant to the Second Circuit's forbearance policy, Petitioner's removal is informally stayed until the Second Circuit decides his motion. (*Id.* at 13.)

Petitioner's writ of habeas corpus, filed on July 27, 2017, requests either that Petitioner be released on bond pending the conclusion of his appeal or, "in the alternative, ... [a] constitutionally adequate, individualized hearing before an immigration judge at which [the government would] bear the burden of establishing by clear and convincing evidence that [Petitioner's] continued detention is justified on the basis of either flight risk or a prospective danger to the community." (*See* Pet. at 18.) As of the date of this decision, Alexandre has been incarcerated for 27 months.

Before this Court is Magistrate Judge Parker's August 28, 2018 Report and Recommendation, recommending that Alexandre's habeas petition be denied.[1] (Report at 2.) Magistrate Judge Parker advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.*; *see also* 28 U.S.C. § 636(b)(1)(C);

---

[1] The relevant procedural and factual background is set forth in detail in the Report and is incorporated herein.

2

Fed. R. Civ. P. 72(b)). Petitioner filed timely objections to the Report on September 10, 2018, and Respondents filed a response to the Petitioner's objections on September 24, 2018. (Pet'r's Obj.; Respondent's Response to Petitioner's Objections ("Resp.'s Resp. to Pet'r's Obj."), ECF No. 26.).

Having reviewed Magistrate Judge Parker's Report and the objections made thereto, this Court ADOPTS the Report in full and overrules Petitioner's objections. Accordingly, the Petition seeking a writ of habeas corpus is DENIED.

## I. LEGAL STANDARD

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). When no party files objections to a report and recommendation, the court may adopt it if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 2005)). Where there are objections, however, the court must make a *de novo* determination as to those portions of the report to which objections are made. *See* 28 U.S.C. § 636(b)(1)(C); *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 273 (S.D.N.Y. 2006). The court need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that this Court "arrive at its own, independent conclusions" regarding those portions to which objections were made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (internal citation omitted); *see United States v. Raddatz*, 447 U.S. 667, 675–76 (1980).

For the reasons that follow, the Report correctly found that Petitioner's § 2254 petition should be denied on the merits.

## II. PETITION FOR WRIT OF HABEAS CORPUS IS DENIED

### A. Opportunities for Release from Detention Provided by the Immigration and Naturalization Act ("INA") and its Regulations Were Properly Assessed.

The Report correctly found that an individual granted parole has not been "lawfully admitted" into the United States; that is, the individual is still deemed an applicant for admission and not "within our borders" for purposes of protections given to citizens or undocumented persons who have been living within the nation's borders (lawfully or unlawfully). 8 U.S.C. § 1182(d)(5)(A), 1101(a)(13)(B); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that under "entry fiction," "arriving aliens" who have been paroled into the country or denied admission but are nonetheless present within the nation's borders are "treated, for constitutional purposes, as if stopped at the border."); (Report at 6–7.). As such, these individuals are deemed "arriving aliens." (Report at 6–7.)

In addition, Magistrate Judge Parker correctly found that "arriving aliens" are treated differently from individuals who have already been admitted into this country (such as Lawful Permanent Residents ("LPRs")) (Report at 7.). For example, if the government seeks to remove an LPR, it may detain such a person pursuant to another provision of the INA during the pendency of his or her removal proceedings. 8 U.S.C. § 1226(a). But that person would also have a right under existing regulations to a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that the person poses a flight risk or danger to the community.[2] 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 U.S.C. § 1226(c); *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

---

[2] There are exceptions to this requirement applicable to certain "criminal aliens." (Report at 7.)

4

In contrast, "arriving aliens" seeking asylum are provided only one mechanism for release into the United States during the pendency of immigration proceedings: conditional parole. *See* 8 U.S.C. §§ 1225(b), 1182(d)(5)(A); 8 C.F.R. §§ 212.5(b), 235.3(c); *see also Jennings*, 138 S. Ct. at 837. Moreover, the Attorney General or his/her designee has discretion to grant parole, as well as the ability to impose certain conditions on the parolee. *See* 8 C.F.R. §§ 212.5(b), 235.3(c).

Given this important distinction, the Report correctly found that Petitioner, who is an "arriving alien," is subject to these provisions.

## B. Standards for Determining Parole to "Arriving Aliens" Were Properly Considered.

The Report correctly found that, in 2009, ICE issued a policy directive establishing standards and procedures for the parole of certain "arriving aliens" found to have a credible fear of persecution or torture. (*See* ICE Policy Directive, ECF No. 6, Ex. 3.) Under the policy, an individual who has been found to have a credible fear of persecution "should be paroled" if the undocumented person's identity is sufficiently established, the undocumented person poses neither a flight risk nor a danger to the community, and no additional factors weigh against release." (*Id.*) If an asylum seeker is denied parole, the directive provides for reapplication and reevaluation based on changed circumstances.

The Report correctly determined that Petitioner's parole application was denied because he failed to sufficiently establish his identity and lack of danger to the community. (*See* Zabbia Decl., ECF No. 13, Ex. B.) Under the ICE Policy Directive, he can reapply for parole based on changed circumstances. (*See* ICE Policy Directive, Ex. 3.)

5

## C. ICE's Parole Process Satisfies the Requirements of Due Process.

### a. Governing Case Law Was Properly Reviewed and Applied to the Parole Process.

The Report provides a thorough review of the case law governing the issues in this case.[3] It correctly found that the United States Supreme Court has repeatedly held that detention of undocumented immigrants during removal proceedings does not violate the Constitution's due process protections. *Jennings*, 138 S. Ct. at 830; *Demore v. Kim*, 538 U. S. 510, 523(2003)) (explaining that detention is "a constitutionally valid aspect of the deportation process"); *accord Reno v. Flores*, 507 U. S. 292, 305–306 (1993); *Shaughnessy v. United States ex rel. Mezei*, 345 U. S. 206, 215 (1953); *Carlson v. Landon*, 342 U.S. 524, 538–542 (1952). The Court's jurisprudence regarding the due process requirements for detention during exclusion or removal proceedings has evolved over time to require an individualized bond hearing in certain specific circumstances. For example, the Court held that a bond hearing was required for a detained LPR who resided continuously in the United States. *See Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953). The Court also found that a bond hearing was necessary where a detained "arriving alien" was imprisoned under Section 1231 of the INA subject to a final order of removal, but where no removal was attainable (i.e. no country was willing to admit him). *See generally Zadvydas*, 533 U.S. 678. However, the Court found that the nearly two-year detention of an arriving alien based on national security grounds without a bail hearing did not violate due process. *See Shaughnessy*, 345 U.S. 206 (1953).

---

[3] As Magistrate Judge Parker noted, the Supreme Court's ruling in *Jennings v. Rodriguez* 138 S. Ct. 830 (2018), abrogated certain arguments originally raised by the Petitioner pertaining to the proper reading and interpretation of the relevant statute. (Report at 6.) The Report therefore only addressed the remaining argument, that Petitioner's prolonged detention without an individualized review violated his due process rights under the Fifth Amendment of the United States Constitution.

Earlier this year, while Petitioner's Habeas Petition was pending, in an appeal from the Ninth Circuit's decision in *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), the U.S. Supreme Court held that the Ninth Circuit erred in applying the doctrine of constitutional avoidance when holding that Sections 1225(b) and 1226(c) were ambiguous and therefore could be interpreted to permit a bond hearing every six months to avoid constitutional due process concerns. *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). It found both provisions of the INA to unambiguously mandate detention during removal proceedings through their conclusion. *Id.* It also held that the duration of the removal proceedings under these provisions was not "indefinite" for purposes of the Fifth Amendment. *Id.*[4] The Court remanded the case to the Ninth Circuit to consider the petitioners' constitutional arguments in the first instance. *Id.* at 851–52. Despite not reaching the constitutional question, the Court did emphasize that "due process is flexible ... and it calls for such procedural protections as the particular situation demands." *Id.* at 852 (internal quotation marks omitted) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

The Report reviewed the post-*Jennings* case law in this District regarding the constitutionality of detention during removal proceedings without an individualized bond hearing pursuant to Sections 1226(c) and 1225(b). (Report at 16.) Magistrate Judge Parker correctly found that courts in this District have differed on the procedural due process required for individuals detained pursuant to Section 1225(b). On the one hand, Judge Sullivan recently held that an "arriving alien" seeking asylum is not entitled to a bond hearing. *See Poonjani v. Shanahan*, No. 17 Civ. 6066 (RJS), 2018 WL 3654781 (S.D.N.Y. July 25, 2018) (citing *Shaughnessy*, 335 U.S.

---

[4] The Court did not address the other constitutional issues raised by respondents in its holding, including whether "arriving aliens" found to have "credible fear" of persecution have a constitutional interest in physical liberty, and whether the due process clause requires certain safeguards at custody hearings for prolonged detention. *Jennings*, 138 S. Ct. at 851–52.

7

at 212). Further, in *Traore v. Ahrendt*, Judge Furman denied the habeas petition of an "arriving alien" from Mali who was seeking asylum and detained pursuant to Section 1225(b)(2)(A), because he had been detained only four months at the time his individualized bond hearing was denied. 18 Civ. 794 (JMF), 2018 WL 2041710 (S.D.N.Y. Apr. 30, 2018).

On the other hand, the Report highlights two cases in this district in which the circumstances dictated that an individualized bond hearing was warranted. *See Brissett v. Decker*, 18 Civ. 2831 (LTS), 2018 WL 3918186 (S.D.N.Y. Aug. 16, 2018); *Ramirez Perez v. Decker*, 18 Civ. 5279 (VEC), 2018 WL 3991497 (S.D.N.Y. Aug. 20, 2018). As Magistrate Judge Parker correctly found, unlike in *Ramirez Perez* and *Brissett*, Petitioner's case does not present circumstances that would entitle him to an individualized bond hearing. Ramirez Perez was an "arriving alien" whose removal proceedings were delayed due to trouble finding an Ixil interpreter. *See Ramirez Perez*, 2018 WL 3991497, at *1. He was not denied asylum after a hearing on the merits at the time his habeas petition was filed, and had connections to his father, who lived in this country. *Id.* Brissett was an LPR who was married to a U.S. citizen and had children lawfully residing here. In comparison, Petitioner is not an LPR and has never lived in this country. He has already been denied asylum based on a hearing on the merits, and his only ties to this country are through a cousin.

In applying this precedent, Magistrate Judge Parker correctly observed that none of the post-*Jennings* decisions evaluating Section 1225(b) discuss the existing parole process in detail, as opposed to an individualized bond hearing, or analyze whether the current parole process satisfies procedural due process for "arriving aliens." (Report at 22.) Therefore, the Report provided a well-reasoned application of the governing case law to the parole process. Citing the Supreme Court's statement in *Shaughnessy* that "'[w]hatever the procedure authorized by

8

Congress is, it is due process as far as an [undocumented immigrant] denied entry is concerned" 345 U.S. at 212, Magistrate Judge Parker correctly determined that other portions of *Shaughnessy* suggest that the particular facts of the "arriving alien's" situation matter, and that a base level of procedural due process is always required. (Report at 23.) She also correctly found that the Court's subsequent decisions in *Zadvydas*, *Demore*, and *Jennings*, read together, indicate that even an "arriving alien" is entitled to a base level of procedural due process through which his or her detention must be evaluated. (Report at 23.) She therefore correctly determined that the central question is whether the parole process provided under current law, regulations and policy, satisfies this base level of due process in light of the Supreme Court case law discussed above. (Report at 24.)

Based on the foregoing, Magistrate Judge Parker interpreted *Shaughnessy* to mean that an "arriving alien's" detention satisfies due process if Congress (1) sets clear and reasonable criteria for when an "arriving alien" may conditionally be granted entry into this country on "parole" pending a final decision on admission, and (2) provides a procedural mechanism for an "arriving alien's" detention to be reviewed to ensure that it is consistent with the criteria. *See Shaughnessy*, 345 U.S. at 212 (holding that the Court must defer to due process procedures put in place by Congress); (Report at 24.). Furthermore, Magistrate Judge Parker observed that the Court in *Jennings* specifically relied on the unique status of "arriving aliens," the finite period for detention under Section 1225(b), and the parole procedure provided by Congress, as factors distinguishing detention of "arriving aliens" from the potentially indefinite detention of the petitioners in *Zadvydas*, who were criminal aliens. 138 S. Ct. at 843–46; (*See also* Report at 24.) As Magistrate Judge Parker correctly notes, these criteria are clearly met here. (*Id.*) Petitioner was represented by an attorney in connection with his parole application and was given all of the information and

instructions needed to obtain parole pending conclusion of his removal proceedings. (*Id.*) Upon the initial denial of Petitioner's parole application, ICE discussed the deficiencies in the application with Petitioner's attorney and offered to make accommodations to help him obtain his Haitian Passport.

Accordingly, Magistrate Judge Parker correctly found that the parole procedure, as currently enforced, satisfies due process for "arriving aliens" because (1) they are differently situated than individuals within our borders, and (2) the period of detention during such a proceeding is not indefinite—it will end upon the conclusion of the removal proceeding. *See Jennings*, 138 S. Ct.at 830; *Demore*, 538 U.S. at 510; *Shaughnessy*, 345 U.S. at 206. (*See* Report at 24–25.)

### D. Petitioner Failed to Exhaust Administrative Remedies At His Disposal.

In addition, the Report correctly found that Petitioner failed to exhaust the available administrative remedies at his disposal because he has yet to re-submit his parole application to ICE with supplemental information that would help determine his identity, risk of flight, and potential danger to the community. *See Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995) ("exhaustion of administrative remedies is normally required as a prudential matter before a court will consider a habeas petition"). Therefore, Magistrate Judge Parker correctly found that Petitioner has the opportunity to, and should be required to, make another request for parole before any habeas petition is granted. (Report at 26.)

### E. This Petition Is Not Moot.

On August 15, 2018—after Magistrate Judge Parker held oral argument on this Petition, but before issuing the Report—the BIA rejected Petitioner's appeal of the Immigration Judge's denial of asylum. (Resp.'s Resp. to Pet'r's Obj. at 7.) Respondent claims that the BIA's decision renders Petitioner's removal order administratively final and would thus make him detained

pursuant to 8 U.S.C. § 1231, which governs post-order detention, not § 1225(b), which governs detention of arriving aliens. (*Id.*) Respondent therefore argues that this shift moots this Petition because it is premised on Petitioner's detention pursuant to § 1225(b). (*Id.*)

However, § 1231 only applies when detention is "imminent and certain," and "no substantive impediments remain to the immigrant's removal." *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018); *see also, Tireus v. Decker*, 17 Civ. 2348 (WHP), 2018 WL 896047, at *7 (S.D.N.Y. Jan 31, 2018); *Heredia v. Shanahan*, 245 F. Supp. 3d 521, 523–25 (S.D.N.Y. 2017); *Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 349–50 (S.D.N.Y. 2016). Here, Petitioner filed a motion to stay his removal along with a petition for review to the United States Court of Appeals for the Second Circuit on August 27, 2018. Because the petition and the motion to stay are currently pending, Petitioner's removal is stayed pursuant to the Second Circuit's forbearance policy until that court decides his motion. (*See* Petr's Obj. at 13 (citing *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012)).) Indeed, under *Hechavarria*, the Second Circuit's forbearance policy is an insurmountable substantive impediment to Petitioner's removal until that Court issues a decision on his motion to stay.

Accordingly, this Court determines that the Petition is not moot because Petitioner remains in detention under § 1225(b) while his petition for review and his motion to stay are pending before the Second Circuit.

## III. CONCLUSION

Having reviewed Magistrate Judge Parker's Report and Recommendation, this Court overrules Plaintiff's objections and ADOPTS the Report in full.

The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is therefore DENIED.

Dated: New York, New York
March 28, 2019

SO ORDERED.

*George B. Daniel*
GEORGE B. DANIELS
United States District Judge